UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-20624-JLK

MARKELA M. PLAIN,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security Administration,

    Defendant.
_____/

**REPORT AND RECOMMENDATION[1] ON
CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' Cross Motions for Summary Judgment. ECF Nos. [19], [21]. Plaintiff Markela M. Plain ("Plaintiff" or "Plain") filed her *pro se* Motion for Summary Judgment ("Plaintiff's Motion") on July 30, 2020. ECF No. [19]. Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed his Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion on August 31, 2020 ("Defendant's Motion") arguing that the correct legal standard was applied. ECF Nos. [21], [22].[2] No reply or opposition was filed by Plaintiff. The Court must now determine whether the decision reached by the Administrative Law Judge ("ALJ") is supported by substantial evidence and whether the correct legal standards were applied. After a review of the parties'

---

[1] On February 11, 2020, this matter was referred to the undersigned for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters. ECF No. [2].

[2] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for Summary Judgment, ECF No. [22], it is the same document as Defendant's Motion, ECF No. [21].

motions, the record, and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED.**

## I.   BACKGROUND

On July 31, 2013, as part of a previous ALJ proceeding, Plain was found to be disabled as of June 1, 2009.[3]  R. at 18.[4]  On June 16, 2017, it was determined that Plain was no longer disabled as of June 1, 2017.  *Id.* at 102–104, 119.  This disability determination was upheld by a State Agency Disability Hearing Officer.  *Id.* at 139–44.  Plain filed a Request for Hearing before an ALJ.  *Id.* at 151–52, 167, 223.[5]  On August 6, 2019, Plain chose to testify at the hearing in Miami, Florida without the assistance of an attorney or representative.  *Id.* at 40–65.  Pedro Roman, a vocational expert ("Roman" or "VE"), also testified at the hearing.  *Id.* at 55–60, 63.  On September 3, 2019, the ALJ issued her decision that Plain's disability ceased on June 1, 2017 and that she has not become disabled again since that date.  *Id.* at 15–32.  The decision by the ALJ was later affirmed by the Appeals Council ("Appeals Council") of the Social Security Administration ("SSA").  *Id.* at 7–10, 244.  Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plain filed the instant action.  ECF No. [1].

---

[3] Although the ALJ stated that Plain was found to be disabled as of June 1, 2009, the estimated onset date for Plain's disability is January 1, 1999.  R. at 88, 94, 470.

[4] References herein to "R. at __" are to the Social Security record, the pertinent parts of which can be found at ECF No. [14].  All the page numbers to the Social Security record referenced herein refer to those assigned by the electronic docketing system as found on the top right corner of the page.

[5] The Record shows that the hearing before the ALJ was originally scheduled for February 20, 2019.  R. at 206, 214, 216, 219, 221.  It appears to have been later rescheduled for August 6, 2019.  *Id.* at 223, 231, 239, 242.

### A. The SSA Hearing

Plain was forty-two years old at the time of the hearing. R. at 47. She testified that she completed education up until the eleventh grade and has not worked in twenty years. *Id.* When asked why she thought she could not work, Plain testified that she got shot on July 15, 2018 and shrapnel hit her pelvis, damaged nerves and "shattered in [her] stomach." *Id.* at 48–49. The ALJ specifically asked Plain why she could not work before she was shot last year. *Id.* at 49. She responded that she has bipolar disorder. *Id.* at 49–50.

Plain was asked if she took any medication and responded that she takes blood pressure pills and she might get her "psych med" back. *Id.* at 50. She stated that the last time she took any psychiatric medication was in 2018. *Id.* at 51. The ALJ noted that the record reflected substance use and asked Plain when she had last used substances of any kind. *Id.* at 50. Plain stated that she last used cocaine seven years ago, in 2012, and has not used any substances, including alcohol, since that time. *Id.* at 50–51. The ALJ then asked Plain to describe a normal day. *Id.* at 51.

Plain stated that she stays in her room a lot and that she is depressed due to her money situation. *Id.* Sometimes her friend will get her out of the house, but she has "not much going on." *Id.* at 51–52.

During the hearing, Plain told the ALJ that she did not understand why she was no longer receiving her disability benefits. She testified that she was "going to fight until [she got her] money back because [she did not] understand that." *Id.* The ALJ explained that the SSA program reviews disability findings to determine if there has been a medical improvement. *Id.* at 53. She explained that it was the ALJ's job to look at the record, including documents provided by Plain at the hearing, and determine whether Plain continued to be disabled or not. *Id.* at 53–54.

3

At the hearing, the VE provided his qualifications and Plain made no objections to permitting him to testify. *Id.* at 56–57. The VE testified that there was no past work from Plain for him to consider. *Id.* at 57. The ALJ then asked the VE two hypotheticals. *Id.* at 57–60. In the first hypothetical, the ALJ asked the VE to assume a claimant of the same age, education and work experience as claimant. *Id.* at 57. The ALJ asked the VE to assume that such a claimant could lift and/or carry, push or pull twenty pounds occasionally and ten pounds frequently; would be able to stand and/or walk with normal breaks six hours in an eight-hour day and sit with normal breaks six hours in an eight-hour day; can occasionally climb ladders, ropes, or scaffolds with no other established postural limitation; has no established manipulative, visual, or communicative limitation; should avoid working at unprotected heights or operating dangerous machinery; is mentally able to understand, remember, and carry out simple routine repetitive tasks and instructions; can sustain attention and concentration for two hour periods at a time and for eight hours in a workday; can use judgment in making work decisions related to simple routine, repetitive tasks and instructions; is able to respond appropriately to supervision, coworkers, and the usual work situation; requires occupation with set routine and procedures and few changes during the workday; can interact appropriately with the public; can respond appropriately to work pressures in the usual unskilled work setting; and can maintain regular attendance and be punctual within customary tolerances and perform activities within schedule. *Id.* at 57–58. The ALJ asked whether that hypothetical individual would be able to perform any jobs in the national economy. *Id.* at 58. The VE responded that such an individual could work as a cashier II, a fast-food worker or a sales clerk. *Id.* The VE provided a brief description of the jobs based on the Dictionary of Occupational Titles ("DOT"): cashier II is described in DOT 211.462-010 and has a light exertion level and a Specific Vocational Preparation ("SVP") rating of two with 1,260,898 jobs available

in the national economy; a fast-food worker is described in DOT 311.472-010 and has a light exertion level and an SVP of two with 1,712,405 jobs available in the national economy; and sales clerk is described in DOT 290.477-014 and has a light exertion level and an SVP of three[6] with 2,443,506 jobs available in the national economy.  *Id.*

In the second hypothetical, the ALJ asked the VE to assume the same hypothetical claimant as in the first scenario, with the same mental limitations, but "with the following additional exertional limitations: [s]uch hypothetical [c]laimant could lift and/or carry, push or pull twenty pounds occasionally and ten pounds frequently; could stand thirty minutes at a time for two hours in an eight-hour day; walk thirty minutes at a time and for two hours in an eight-hour day; stand and walking four hours in an eight-hour day; can sit with normal breaks, six hours in an eight-hour day." *Id.* at 59.  This hypothetical claimant would need "a cane to ambulate for long distances and is able to use a free hand to carry small objects . . . ." and could only use the right and not the left lower extremity to operate foot control.  *Id.*  In addition, the hypothetical claimant could occasionally climb ramps and stairs, never ladders, ropes or scaffold; could occasionally stoop, never kneel, crouch or crawl; has no established manipulative visual or communicative limitations; should not work at unprotected heights or have concentrated exposure to extreme cold or heavy vibrations. *Id.* at 60.  The ALJ then asked whether there would be any jobs in the national economy for such a hypothetical individual to perform.  *Id.*  The VE responded that this individual would be best geared toward sedentary jobs such as the following: charge account clerk, document preparer, and telephone quotation clerk.  *Id.*  A charge account clerk is described in DOT 205.367-014 and an SVP of two with 33,485 jobs available in the national economy.  A document preparer

---

[6] The VE stated that he disagreed with the DOT as stating that a salesclerk had an SVP of three; instead, the VE believed it should be classified as having an SVP of two. R. at 58.

5

is described in DOT 249.587-018 and has an SVP of two with 90,537 jobs available in the national economy. *Id.* A telephone quotation clerk is described in DOT 237.367-046 and has an SVP of two with 88,779 jobs available in the national economy. *Id.* The ALJ asked Plain if she wished to ask the VE any questions or challenge any of the hypotheticals. *Id.* at 60–61. Plain stated that she disagreed with his determination that she could work and referred to her medical records which included information that she claimed the VE did not know. *Id.* at 61–62.

### B. Statutory and Regulatory Framework

This case involves a review of Plaintiff's continuing disability in order to determine if she remained eligible to receive benefits during a finite period of time. 20 C.F.R. § 404.1590(a). Social Security Regulations establish an eight-step evaluation process to determine whether a claimant's medical condition has improved or if a disability continues. *See* 20 C.F.R. § 404.1594(f).

The first determination is whether the claimant is engaged in substantial gainful activity. If so, a finding of a disability status will end. 20 C.F.R. § 404.1594(f)(1). At step two, it must be determined whether the claimant suffers from an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If so, the disability will be found to continue. 20 C.F.R. § 404.1594(f)(2). At step three, the determination to be made is whether there has been a medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3). A medical improvement is defined in the Regulations as any decrease in the medical severity of any impairment which was present at the time of the most recent favorable decision finding the claimant disabled. 20 C.F.R. § 404.1594(b)(1). If a medical improvement has occurred, the analysis proceeds to the fourth step; otherwise it proceeds to the fifth step. At step four, it must then be determined whether the improvement relates to the

claimant's ability to do work. 20 C.F.R. § 404.1594(f)(4). A medical improvement relates to the claimant's ability to work if it results in an increase in the claimant's capacity to perform basic work activities. 20 C.F.R. § 404.1594(b)(3). If the medical improvement relates to the claimant's ability to do work, then the analysis proceeds to the sixth step. At step five, the ALJ must assess whether an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). At step six, if the medical improvement is shown to be related to the claimant's ability to work, the ALJ must determine whether the claimant's current impairments in combination are severe.[7] 20 C.F.R. § 404.1594(f)(6). If the claimant's impairments do not significantly limit the claimant's ability to perform basic work activities, then the claimant is no longer disabled. *Id.* At step seven, the ALJ must assess the claimant's residual functional capacity ("RFC")[8] based on the claimant's current impairments. 20 C.F.R. § 404.1594(f)(7). At the eighth step, the ALJ must determine whether work exists that the claimant can perform, given the claimant's age, education, and residual functional capacity. 20 C.F.R. § 404.1594(f)(8). If the claimant can perform other work and that work exists in significant numbers in the national economy, then the claimant is no longer disabled. *Id.* If the claimant cannot perform other work, then the claimant's disability continues. *Id.*

In a cessation of benefits case, the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because Plaintiff has experienced "medical improvement." *Mesa v. Saul*, No. 1:19-CV-21736, 2020 WL 4932831, at *3 (S.D. Fla. Aug. 24, 2020), *report and recommendation adopted sub nom. Mesa v. Berryhill*, No. 19-21736-CIV, 2020

---

[7] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to do basic work activities for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 404.1520a(d)(1), 404.1522(a)–(b).

[8] RFC is defined as the "most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 416.945(a).

WL 5028789 (S.D. Fla. Aug. 24, 2020) (citing *Olivo v. Colvin*, No. 6:16-cv-259-Orl-40JRK, 2017 WL 708743, at *2 (M.D. Fla. Jan. 30, 2017)).

### C. The ALJ's Decision

On September 3, 2019, the ALJ issued her decision finding that Plain's disability ended on June 1, 2017, and that Plain had not been disabled since that date. R. at 18–32. In reaching her decision, the ALJ applied the eight-step sequential evaluation process that must be used when considering these types of claims. *Id.* at 20–32; *see* 20 C.F.R. § 404.1594. As a threshold matter, the ALJ found that the most recent favorable medical decision showing that Plain was disabled, known as a comparison point decision ("CPD"), was dated July 31, 2013. *Id.* at 20, 137. At the time of this CPD, Plain had bipolar disorder. *Id.* at 20, 137, 470–71. The impairment was found to meet sections 12.04 A and B of 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 20; *see* 470–71.

At step one, the ALJ determined that Plain had not engaged in any substantial gainful activity. *Id.* at 20. At step two, the ALJ found that the since June 1, 2017, Plain has had the following severe impairments: bipolar disorder, cocaine abuse, hypertension, obesity, lumbalgia, status post gunshot wound to the left ilium, partial sciatic nerve injury, and left knee disorder. *Id.* However, none of these severe impairments or combination of impairments met or medically equaled the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* In reaching this conclusion, the ALJ noted that based on the record, Plain only had mild limitations in three areas of mental functioning: (1) understanding, remembering, or applying information, (2) interacting with others, and (3) adapting or managing oneself. *Id.* at 21–22. Plain had a moderate limitation in the area of mental functioning for concentrating, persisting, or maintaining pace. *Id.*

At step three, the ALJ found that a medical improvement had occurred on June 1, 2017. *Id.* at 22. The ALJ relied on the consultative psychological evaluation by Psychologist Anele Diaz

who stated that Plain's "cognitive functioning is intact, and her intellectual functioning is estimated within the [a]verage range" and recommended her to therapy. *Id.* at 23, 468. The ALJ also relied on the Disability Officer's Decision notes from March 2018, which documented that Plain did not appear depressed, her speech was good, and she had adequate comprehension. *Id.* at 23, 138–39. At step four, the ALJ found that the medical improvement related to the ability to work because by June 1, 2017, Plain's "CPD impairments no longer met or medically equaled the same listings that [were] met at the time of the CPD." *Id.* at 23. The ALJ again referenced the findings of Psychologist Diaz. *Id.* at 23, 468. At step six, the ALJ found that since June 1, 2017, Plain had continued to have a severe impairment or combination of impairments.[9] *Id.* at 23.

At step seven, the ALJ found that Plain had the RFC to perform sedentary work with a number of limitations.[10] *Id.* at 24. In making this determination, the ALJ found that while Plain's

---

[9] The ALJ did not consider step five because pursuant to 20 C.F.R. § 404.1594(f)(4), if the medical improvement is related to the ability to work, then the analysis may proceed to step six and bypass step five.

[10] The ALJ concluded as follows:

> Specifically, the claimant can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. She can stand for 30 minutes at a time and for 2-hours in an 8-hour workday, total standing/walking 4-hours in an 8-hour workday. She can sit with normal breaks for 6 hours in an 8-hour workday. She would need use of a cane to ambulate for long distances and is able to use free hand to carry small objects. She can use her left upper extremity continuously to operate foot controls, but should never use her left lower extremity to operate foot controls. She can occasionally climb ladders, ropes, or scaffolds. She has no established manipulative, visual, or communicative limitations. The claimant cannot work at unprotected heights or have concentrated exposure to extreme cold or heavy vibrations. Mentally, the claimant is able to understand, remember, and carryout simple, routine, repetitive tasks and instructions. She is able to sustain attention/concentration for 2-hour periods at a time and for 8 hours in the workday on simple, routine, repetitive tasks and instructions. She can use judgment in making work decisions related to simple, routine, repetitive tasks and instructions. She is able to respond appropriately to supervision, co-workers and usual work situations. She requires occupation with set routine and procedures and few

9

"medically determinable impairments could have reasonably been expected to produce the alleged symptoms, . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence . . . ." *Id.* at 25.

Finally, at step eight, the ALJ considered Plain's age, education, work experience, and her RFC and concluded that Plain could work as: (1) a charge account clerk as described in DOT 205.367-014 with an SVP of two and 33,485 jobs available in the national economy; (2) a document preparer as described in DOT 249.587-018 with an SVP of two and 90,537 jobs available in the national economy; and (3) a telephone quotation clerk as described in DOT 237.367-046 with an SVP of two and 88,779 jobs available in the national economy. *Id.* at 31.

## II.     STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

---

changes during the workday. She can interact appropriately with the pub[l]ic. She can respond appropriately to work pressures in a usual work setting. She can maintain regular attendance and be punctual within customary tolerances. She can perform activities within a schedule.

R. at 24.

In reviewing the ALJ's decision, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision. *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015). Even if the Court finds that the evidence preponderates against Commissioner's decision, the Court must affirm Commissioner's decision if the decision is supported by substantial evidence. *See Ellison*, 355 F.3d at 1275. In this respect, "the ALJ has a basic obligation to develop a full and fair record," given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *Id.* However, no presumption of validity attaches to the ALJ's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. ANALYSIS

Plain argues that the SSA, after twenty years, ceased her disability benefits without cause and that the ALJ did not consider that she had recently been shot. ECF No. [19] at 1. Defendant responds that the ALJ's decision is supported by substantial evidence showing that Plain's impairments had medically improved such that she can perform substantial gainful activity. ECF No. [21] at 5.

An ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to her ability to work, and the claimant is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594(a). The ALJ is required to conduct a multi-step analysis to determine whether the

claimant's benefits should be terminated. 20 C.F.R. § 404.1594(f). Importantly, the ALJ must compare prior and current medical evidence to show whether medical severity has decreased. *Klaes v. Comm'r of Soc. Sec.*, 499 F. App'x 895, 896–97 (11th Cir. 2012) (holding that the ALJ relied only on records dating from 2006 to 2009; however "[t]he ALJ did not mention, much less compare, the medical evidence of Klaes' impairments between 1999 and 2003 that was relied on to make the original disability determination."). "If the ALJ fails to evaluate the prior medical evidence and make such a comparison, we must 'reverse and remand for application of the proper legal standard.'" *Id.* at 896 (quoting *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir.1984)).

In this case, the ALJ's Opinion shows that the ALJ conducted a full review of the complete medical record and used current and prior medical records to support her finding of medical improvement. Although there is no strict requirement for evaluation of prior objective findings, 20 C.F.R. § 404.1594(c)(1), the ALJ here explicitly noted that Plain was most recently found disabled in a determination from July 31, 2013 due to bipolar disorder which met the listing requirements 12.04 A and B of 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 20; *see* 470–71. The ALJ then reviewed the more recent evidence to determine that Plain had not been disabled since June 1, 2017. R. at 20–30. Specifically, the ALJ found that Plain had regained the RFC to perform sedentary work despite several limitations and that she was no longer disabled in consideration of the medical record. *Id.*

In reaching her determination, the ALJ considered the November 2016 notes of Dr. Lopez-Alvar. *Id.* at 26, 28, 30, 413. The notes indicated that Plain was using cocaine and that Dr. Lopez-Alvar prescribed Risperidone and Benadryl for a mild bipolar disorder. *Id.* at 413–14. Plain had also been counseled to refrain from cocaine use and smoking. *Id.* at 414. On November 14, 2016, Dr. Poitier noted that Plain had a depressed mood, but unremarkable memory and good

12

insight/judgment. *Id.* at 456. Dr. Poitier changed Plain's medication to Geodon and Celexa. *Id.* at 454–57. It appears from the medical record that Plain did not seek mental health treatment after that point.

The ALJ also considered the treatment record dated July 25, 2018 documenting that Plain was treated at Jackson South Hospital from July 16, 2018 through July 22, 2018 for a gunshot wound on her left buttock. *Id.* at 27, 746–48. The ALJ noted that a general examination revealed that her back was normal, she had a full range of motion in her extremities with no clubbing, cyanosis, or edema. *Id.* at 27, 747. Also, a neurological exam was normal and there were no signs of infection. *Id.* She received two therapeutic injections that day. *Id.*

The ALJ also considered the March 12, 2019 orthopedic evaluation of Dr. Millheiser, *id.* at 27, 29–30, 659–61, which specifically states that "patient can do sedentary activities" after conducting a physical examination and reviewing Plain's x-rays of her knee and pelvis. In his evaluation, Dr. Millheiser mentioned that "there appears to be exaggeration in [Plain's] complaints." *Id.* at 661. Dr. Millheiser also completed a medical source statement of Plain's ability to do work-related activities. *Id.* at 666–71. Therein, Dr. Millheiser provided a number of work-related physical restrictions, which the ALJ took into consideration when assessing the RFC. *Id.* at 24.

The ALJ also considered the opinion of Psychologist Anele Diaz, who evaluated Plain in February 2018. *Id*. at 21–23, 28–29, 466–68. Diaz reported that Plain "ambulates without the assistance of any assistive device," "her grooming was fair," and she "arrived early and used public transportation." *Id.* at 466. Although "Plain reported a long history of mental illness" she is not taking her medications because of lack of insurance. *Id.* at 467. Plain reported that "since she is not taking her medications, she has been 'snappy' and fighting with people." Plain also mentioned

13

that "she has been feeling severely depressed and hearing voices." *Id.* Diaz also stated that Plain's "cognitive functioning is intact, and her intellectual functioning is estimated within the [a]verage range." *Id.* at 468. Diaz recommended therapy for psychiatric treatment and a referral was provided. *Id.*

The ALJ also considered the opinions of state agency physician Olga Garcia, *id.* at 95–99, and state agency psychologists Cristina Grand, *id.* at 94–95, and Sally Rowley, *id.* at 473–487. Physician Garcia conducted an RFC assessment and evaluated Plain's exertional limitations and considered that Plain exhibited moderate functional limitations. *Id.* at 99. Psychologist Grand stated that based on the CPD, there was a medical improvement since the CPD. *Id.* at 95. Psychologist Rowley completed a Psychiatric Review Technique Form and concluded that "[t]he totality of the evidence indicates that claimant does not have any significant limitations in function and [the] evidence strongly suggests substance abuse." *Id.* at 487.

The above-mentioned portions of the medical record, all completed after the CPD from July 31, 2013, provide substantial evidence to support the ALJ's finding that Plain had regained the RFC to perform sedentary work despite several limitations. The Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited into whether substantial evidence in the record supported the ALJ's findings. *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178. Given that review, the undersigned finds that substantial evidence supported the ALJ's finding that Plain was no longer disabled.

### IV.    RECOMMENDATION

In accordance with the foregoing Report and Recommendation, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED**, and Defendant's Motion for Summary Judgment be **GRANTED.**

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within FOURTEEN (14) DAYS of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 29th day of January, 2021.

_____
HONORABLE JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE